BUCHHOLZ MORTUARIES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ESTATE OF CLETUS F. BUCHHOLZ, DECEASED, PHILOMENA C. BUCHHOLZ, PERSONAL REPRESENTATIVE; PHILOMENA C. BUCHHOLZ, TRANSFEREE; JAMES J. BUCHHOLZ AND KATHLEEN M. BUCHHOLZ; DONALD BUCHHOLZ; DONALD BUCHHOLZ AND SHARON BUCHHOLZ; THOMAS W. BUCHHOLZ AND JENNIFER M. BUCHHOLZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Buchholz Mortuaries, Inc. v. Commissioner
Docket Nos. 13962-88, 14064-88
United States Tax Court
T.C. Memo 1990-269; 1990 Tax Ct. Memo LEXIS 288; 59 T.C.M. (CCH) 746; T.C.M. (RIA) 90269; May 30, 1990, Filed Michael G. Goldstein and Robert F. Dwornick, for the petitioners. J. Mack Karesh, for the respondent. CLAPP, Judge. CLAPP
*1015 MEMORANDUM OPINION Respondent determined the following deficiencies and liabilities in petitioners' Federal income taxes: Docket No. 13962-88
Year
Deficiency
Buchholz Mortuaries, Inc.
1981
$ 13,404.20 1982
41,127.00 1983
19,721.00 Docket No. 14064-88
Year
Deficiency
Estate of Cletus F. Buchholz,
Deceased, Philomena C. Buchholz,
Personal Representative
1981
$ 283,467.00
1982
149,859.00
1983
146,729.00
1984
136,765.00
James J. & Kathleen M. Buchholz
1981
106,534.31
1982
54,476.00
1983
52,805.00
1984
51,877.00
Donald Buchholz
1981
80,132.00
1982
36,570.00
Donald & Sharon Buchholz
1983
36,038.00
1984
35,093.00
Thomas W. & Jennifer M. Buchholz
1981
129,704.00
1982
63,351.00
1983
59,062.00
1984
62,294.00
Liability
Philomena C. Buchholz, Transferee
1981
283,467.00
1982
149,859.00
1983
146,729.00
1984
136,765.00
*289 This case was submitted fully stipulated under Rule 122. After concessions, the issues are (1) whether the corporate petitioner's redemption of its stock resulted in a constructive dividend distribution to the individual petitioners; (2) if not, whether the corporate petitioner's *1016 repayment of the principal amount of a loan incurred to purchase the stock resulted in a constructive dividend distribution to the individual petitioners; (3) whether the corporate petitioner's payment of the interest and related expenses on the loan should be treated as a constructive dividend distribution to the individual petitioners; (4) whether the interest and related expenses on the loan are nondeductible to the corporate petitioner on the ground that they were constructive dividends; and (5) whether the corporate petitioner should treat a loan service charge and a loan legal fee as nondeductible capital expenditures rather than as deductible current expenses. All section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All petitioners were located in or resided in Missouri when they filed *290 their petitions. Prior to the transaction at issue, Buchholz Mortuaries, Inc. (Mortuaries), had 1,211 outstanding shares of common stock and 355 outstanding shares of preferred stock. Cletus F. Buchholz, James J. and Kathleen M. Buchholz, Donald and Sharon Buchholz, and Thomas W. and Jennifer M. Buchholz owned in total 219 of the outstanding shares of common stock and 92 of the outstanding shares of preferred stock. Cletus F. Buchholz, who died subsequent to the transaction in issue, was the father of James J. Buchholz, Donald Buchholz, and Thomas W. Buchholz. All four collectively will be referred to as the Buchholzes. Between November 12, 1980, and November 30, 1981, Mortuaries held a number of meetings regarding the possible purchase of the stock of certain of its shareholders. At the meeting on September 17, 1981, it was suggested that Mortuaries buy either 80 percent of its stock or all of its outstanding stock except that owned by Cletus Buchholz, with the purchase being funded in part with corporate funds and in part with borrowed funds. On October 9, 1981, the board of directors of Mortuaries adopted a resolution approving a tender offer by the Buchholzes. On that same *291 date, the Buchholzes submitted a tender offer to all the other shareholders that said in part --
Cletus Buchholz, James Buchholz, Thomas Buchholz and Donald Buchholz, or their assigns (collectively referred to as "Buchholz") hereby offer to purchase, for cash, all of the outstanding common stock of Buchholz Mortuaries, Inc., for a purchase price of One Thousand Dollars ($ 1,000) Dollars per share, and all of the preferred stock of Buchholz Mortuaries, Inc., for a purchase price of One Hundred Forty ($ 140.00) Dollars per share, on the following terms and conditions. The cover letter accompanying the tender offer was signed by Cletus F. Buchholz, and said in part -- This Tender Offer has been unanimously approved by the Board of Directors of Buchholz Mortuaries, Inc., this date. * * * My sons and I are undertaking this project to keep Buchholz Mortuaries in the Buchholz family.
Stockholders who wished to sell their stock signed both a Letter of Tender accepting "the offer of Cletus Buchholz and Sons, or their assigns" and an Assignment and Stock Power assigning the shareholder's stock to "Cletus Buchholz and Sons, or their assigns." On October 20, 1981, Baden Bank *292 (the bank) approved a loan to Mortuaries that was not to exceed $ 950,000. On October 29, 1981, the board of directors of Mortuaries passed a resolution stating-- that the corporation shall accept the assignment of the Offers of Tender from Cletus Buchholz and Sons, and to accept the obligation for payment thereof * * *. On October 30, 1981, Cletus Buchholz sent the selling shareholders a letter notifying them that the conditions of the tender offer had been met, and that they could expect to receive payment by November 14, 1981. On November 2, 1981, the bank sent Mortuaries a letter describing the terms of the loan. The letter specified that the collateral would be 3 parcels of real estate owned by Mortuaries, and that the Buchholzes would guarantee the loan. Mortuaries borrowed $ 700,000 from the bank on November 12, 1981. The note was executed by the Buchholzes and Mortuaries with all signing as primary obligors and none signing as guarantors. On November 14, 1981, Mortuaries mailed checks totalling $ 988,040 to the selling shareholders in accordance with the terms of the tender offer. The $ 988,040 consisted of $ 288,040 of the corporate funds in addition to *293 the $ 700,000 borrowed from the bank. On the same date, Mortuaries retired as treasury stock the 955 shares of common stock and 236 shares of preferred stock acquired pursuant to the tender offer. Mortuaries repaid the $ 700,000 loan by December 31, 1984. In addition to the principal repayment of $ 700,000, Mortuaries made these payments: 1981
1982
1983
Interest
$ 14,201
$ 80,000
$ 36,591
Loan service charge
5,149
Loan legal fee
3,500
*1017 The first issue is whether Mortuaries' redemption of its stock resulted in a constructive dividend distribution to the Buchholzes. A constructive distribution occurs when a corporation redeems stock which its shareholders were primarily and unconditionally obligated to buy. See ; , affd. without published opinion ; ; . Such a distribution is a dividend to the extent *294 of the corporation's earnings and profits. Sec. 316. In the instant case, the parties agree that Mortuaries' earnings and profits exceeded the amount of any constructive distribution. Accordingly, the Buchholzes will be liable for a dividend if they were primarily and unconditionally obligated to buy the Mortuaries stock. Respondent claims that the Buchholzes did have such a primary and unconditional obligation. He points out that the tender offer said that-- Cletus Buchholz, James Buchholz, Thomas Buchholz and Donald Buchholz, or their assigns (collectively referred to as "Buchholz") hereby offer to purchase, for cash, all of the outstanding common stock * * * and all of the preferred stock of Buchholz Mortuaries, Inc. * * *. The Buchholzes assert, however, that the phrase "or their assigns" following their names means that they did not have the requisite liability. They cite , in which the parties to the transaction contemplated a stock purchase by the corporation. The taxpayer sent the other shareholders a letter informing them that he intended to purchase their stock either directly or by assigning *295 his right to the corporation. The accompanying stock purchase agreement stated that the purchase would be made by the taxpayer "or assigns," with the language "or assigns" included because the transaction was intended to be a redemption by the corporation. The corporation was not a party to the stock purchase agreement, but one paragraph of the agreement provided that the taxpayer would have the option to have the corporation purchase the stock. The taxpayer subsequently assigned his rights under the stock purchase agreement to the corporation, which then redeemed the stock. We concluded that the primary and unconditional obligation to purchase the stock was incurred not by the taxpayer, but by the taxpayer or his assigns. Accordingly, there was no constructive dividend. The facts in the instant case are similar to those in Bunney. Mortuaries was considering buying the stock as early as September 17, 1981, and a loan to Mortuaries was approved only 11 days after the tender offer. Thus, the Buchholzes apparently always contemplated the possibility of a redemption by Mortuaries. Unlike the letter in Bunney, the tender offer documents did not state that the purchase might *296 be made by Mortuaries, but the language "or assigns" in the tender offer gave the Buchholzes the right to have Mortuaries make the purchase. We conclude that in all significant aspects the facts in the instant case are the same as those in Bunney, and that the holding of that case extends to the instant case. Petitioners also cite , in which the taxpayer entered into an agreement to purchase all of the stock of a corporation. One paragraph of the agreement gave the taxpayer -- the right to assign this Agreement to a corporation, thereby releasing [the taxpayer] therefrom, and substituting such Corporation in the place of [the taxpayer] under this Agreement, with the same force and effect as if this Agreement were originally made with such Corporation, provided that such Corporation shall, by writing, agree to be bound by all of the terms, covenants and conditions of this Agreement. [.] Subsequently, the taxpayer formed Alfred Corporation (Alfred) to purchase the stock. One day later, the taxpayer assigned the agreement to Alfred, with Alfred *297 agreeing to be bound by the terms, covenants, and conditions of the agreement. Several days later, Alfred purchased the stock. We held that the taxpayer had incurred no personal obligation to purchase the stock. See ; Our holding in Kobacker applies not only to an agreement with an express novation provision, but also to an agreement that defines the purchaser as the taxpayer "or assigns," as in the instant case. The stock purchase agreement in the instant case is also like the offer to purchase the outstanding shares of a corporation in . The contract in Ames provided *1018 that the taxpayer would "purchase or cause to be purchased" the stock. We held that the promise to "purchase or cause to be purchased" provided several methods for satisfying the obligation created under the contract, and therefore the taxpayer incurred no absolute obligation to purchase the stock. The language designating the Buchholzes "or assigns" as the purchaser *298 of the Mortuaries stock also provided alternative methods for satisfying the obligation created under the stock purchase agreement, and therefore the Buchholzes incurred no absolute obligation to purchase the shares. Accordingly, the amounts that Mortuaries paid in redemption of its shares were not constructive dividends to them. The second issue is whether Mortuaries' repayment of the loan incurred to purchase the stock resulted in a constructive dividend distribution to the Buchholzes. Both the loan application approved by the bank on October 20, 1981, and the November 2, 1981, letter confirming the loan, named Mortuaries as the borrower and provided that Mortuaries property would be used as collateral. Mortuaries and the Buchholzes both were primarily liable on the note, but it is clear that the bank looked to the Buchholzes only as guarantors. Respondent cites no authority in support of his view that the Buchholzes realized income upon Mortuaries' repayment of the obligation it incurred to purchase the stock. We note that in , the taxpayer realized income when the corporation discharged an obligation *299 on which it and the taxpayer were jointly liable. However, that case is distinguishable because the taxpayer rather than the corporation had acquired the stock. See . Accordingly, the second issue is resolved in favor of the Buchholzes. The third issue is whether the interest, loan service charge, and loan legal fee should be treated as a constructive dividend distribution to the individual petitioners. This issue is essentially the same as the second issue and also must be resolved in favor of the Buchholzes. The fourth issue is whether the interest, loan service charge, and loan legal fee are nondeductible on the ground that Mortuaries' payment of those expenses were constructive dividends. Since we have decided that Mortuaries' payment of these expenses did not represent constructive dividends, we must resolve this issue in favor of Mortuaries. The fifth issue is whether the corporate petitioner must treat the loan service charge and the loan legal fee as nondeductible capital expenditures rather than as deductible current expenses. We hold for respondent on this issue, as loan expenses are capital expenditures. *300 . Respondent agrees, however, that Mortuaries may amortize these loan expenses over the 3-year life of the loan. Decisions will be entered under Rule 155.